United States District Court
Southern District of Texas
**ENTERED**
June 25, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **MARGUERITE DOMINGUEZ ON BEHALF OF AKRAM SAMEH TAWFIK ELSAYED ALY KHEDR,** | § | |
| **Petitioner,** | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:25-CV-00250** |
| **WARDEN, LASALLE COUNTY REGIONAL DETENTION CENTER, *et al.*,** | § | |
| **Respondents.** | § | |

**MEMORANDUM & ORDER**

Pending before the Court is Petitioner Akram Sameh Tawfik Elsayed Aly Khedr's ("Petitioner" or "Mr. Khedr") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1), brought by his next friend and fiancée Marguerite Dominguez challenging the lawfulness of his detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS).

For the following reasons, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED IN PART**.

**Background**

**A. Factual Background**

Petitioner is a native and citizen of Egypt who entered the United States on a B-2 visa through Chicago, Illinois on May 22, 2018, when he was 16 years old. (Dkt. 1 at 18; Dkt. 15 at 1,

Attach. 3.)[1] He submitted an affirmative application for asylum and related protections to U.S. Citizenship and Immigration Services (USCIS) on February 7, 2019, and attended an asylum interview on February 28, 2019. (Dkt. 1 at 18.) On June 12, 2019, USCIS issued a notice referring Mr. Khedr's asylum application to the immigration court and DHS served him with a Notice to Appear (NTA) placing him into removal proceedings under 8 U.S.C. § 1229a. (*Id.*; Dkt. 15 at 1, Attach. 3.) Mr. Khedr continued to pursue his applications for asylum and related protections before the immigration court, and he remained out of immigration custody for the duration of his proceedings before the Immigration Judge (IJ). (*See* Dkt. 1 at 18.) On September 22, 2022, the IJ issued an oral decision denying Mr. Khedr's applications for relief and ordering him removed to Egypt. (*Id.* at 18–21; Dkt. 15, Attach. 4.) Mr. Khedr reserved appeal to the Board of Immigration Appeals (BIA) and submitted a timely appeal of the IJ's decision. (Dkt. 1 at 22.)

On August 17, 2025, while his appeal to the BIA still remained pending, Mr. Khedr was taken into custody by immigration authorities pursuant to an administrative warrant issued by DHS. (Dkt. 15 at 2, Attach. 5; Dkt. 21 at 3.) He was also issued a Notice of Custody Determination stating that DHS had determined that he should be detained pending a final administrative determination of his immigration case. (Dkt. 15 at 2, Attach. 6.) On October 6, 2025, the BIA issued an order on Mr. Khedr's appeal, which had been pending for approximately three years, remanding the case for further proceedings because the record was incomplete due to a missing transcript making it such that "the Board was unable to meaningfully review [the] appeal." (Dkt. 1 at 2, 5–7, 29; Dkt. 15 at 2, Attach. 8; Dkt. 25 at 2.)

---

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

Mr. Khedr also requested a custody redetermination hearing before an IJ and was given a bond hearing on October 31, 2025, at which the IJ denied Mr. Khedr's request for bond, finding that he was both a danger to the community and a flight risk. (Dkt. 1 at 1, 41; Dkt. 15 at 2, Attach. 7; Dkt. 21 at 3.) Mr. Khedr alleges that the IJ improperly denied him bond based on a juvenile record that had been previously sealed. (*See* Dkt. 21 at 3; Dkt. 15 at 2, Attach. 7.) Petitioner also informed that Court that he attempted to appeal the IJ's denial of bond to the BIA but was told that the payment did not go through after the 30-day appeal window expired. (*See* Dkt. 25 at 2; Dkt. 27 at 1.) Since then, Petitioner has remained in immigration detention for nearly 10 months since he was first detained by DHS in August of 2025. During that time, Petitioner alleges that his immigration court hearings have been scheduled and rescheduled various times and that DHS has failed to make meaningful progress towards a resolution of his removal case. (*See* Dkt 1 at 6; Dkt. 21 at 6–7; Dkt. 25 at 2; Dkt. 27 at 2; Dkt. 35 at 3.) Petitioner also alleges that he has suffered medical neglect and been denied access to visits with his fiancée during this time. (*See* Dkt. 21 at 4–7.)

**B. Procedural Background**

Petitioner, through his fiancée, filed a Petition for Writ of Habeas Corpus, (Dkt. 1), in the United States District Court for the Western District of Texas, San Antonio Division. Because Petitioner was detained at the LaSalle County Detention Center in Encinal, Texas, which is located within the Southern District of Texas, the case was subsequently transferred to the United States District Court for the Southern District of Texas, Laredo Division on December 3, 2025, and assigned to the undersigned. (*See* Dkts. 1, 3, 4, 15.) Petitioner also submitted a Motion for Appointment of Counsel. (Dkt. 14.) Petitioner argues that his detention is unlawful because he has been confined for an unreasonably prolonged period of time without a resolution to his

immigration case. (*See* Dkt. 1 at 6; Dkt. 21 at 4; Dkt. 27 at 2.) Petitioner also raised claims challenging his conditions of confinement, including allegations of medical neglect, abuse and misconduct by facility staff, and arbitrary and punitive transfers between facilitates. (Dkt. 21 at 5.)

The Court initially ordered the named warden to respond to Petitioner's petition on or before December 10, 2025. (Dkt. 6.) The United States of America, ("Intervenor") filed a Motion to Intervene, (Dkt. 11), and the Court granted the motion and extended the response deadline. (Dkt. 12.) Intervenor timely filed a Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 15), arguing that Petitioner is lawfully detained under 8 U.S.C. § 1231(a)(6), the applicable detention authority for noncitizens with a final order of removal, and that his claims failed under the standards set out for post-removal-order detention in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*Id.* at 8–11.) Petitioner filed a response (Dkts. 21, 22), contesting that he was subject to a final order of removal based on fact that his case had been remanded for further proceedings by the BIA.

Given the factual disagreement between the parties, the Court ordered Intervenor to submit an advisory or responsive brief addressing the discrepancies in the facts as alleged by the parties. (Dkt. 23.) Intervenor subsequently filed an advisory changing its position to indicate that Petitioner is not subject to a final order of removal and is presently detained under 8 U.S.C. § 1226(a) as a noncitizen who was previously admitted on a visa but overstayed. (Dkt. 25 at 2–3.) Petitioner filed several supplementary filings including additional documents and letters from his family members which indicated that his immigration proceedings remained ongoing without resolution. (*See, e.g.*, Dkts. 29, 30, 35.) Given Petitioner's ongoing detention, the Court ordered an additional advisory from Intervenor requesting information as to what further action had occurred in Petitioner's removal case after it was remanded by the BIA in October of 2025. (Dkt. 36.) Intervenor submitted

an advisory informing the Court that Petitioner was ordered removed by an IJ on April 24, 2026, but had reserved appeal and had until May 24, 2026, to appeal the decision. (Dkt. 37.) The Court requested further information about whether Petitioner filed a timely appeal, (Dkt. 38), and Intervenor submitted an Advisory, (Dkt. 39), correcting its prior submission to the Court which had contained factual errors. In its new Advisory, Intervenor stated that Petitioner was not ordered removed on April 24, 2026, because the hearing was postponed to May 21, 2026, on which date he was ordered removed and reserved appeal. (Dkt. 39.) Petitioner also filed a supplement indicating that he intends to submit a timely appeal to the BIA and informing the Court that he had been transferred to the South Texas ICE Processing Center in Pearsall, Texas in violation of the Court's Order dated December 3, 2025, (Dkt. 6), prohibiting transfer outside of this Court's jurisdiction. (*See* Dkt. 42.)

**Discussion**

The issue before the Court is whether Petitioner's prolonged detention under 8 U.S.C. § 1226(a) for approximately ten months while his removal proceeding remain ongoing violates his rights under the Due Process Clause of the Fifth Amendment.[2] The Court first considers whether it has jurisdiction over Petitioner's claims before turning to the merits of Petitioner's challenge.

**A. Jurisdiction**

As a threshold matter, the Court analyzes whether there is subject-matter jurisdiction over the petition given that it was brought by Petitioner's fiancée filing as a "next friend." (*See* Dkt. 1.) In order to qualify as a "next friend" the individual must establish "(1) why the detained person did not sign and verify the petition and (2) the relationship and interest of the would be 'next-

[2] At this time, the Court declines to address Petitioner's additional claims relating to the conditions of his confinement which remain pending before the Court. (*See* Dkt. 1 at 6–7; Dkt. 15 at 11–13.)

friend'" to the satisfaction of the Court. *Weber v. Garza*, 570 F.2d 511, 513–14 (5th Cir. 1978). Upon review of the record, the Court determines that Petitioner's fiancée has satisfied the requirements to qualify as the "next friend" of Petitioner and file on his behalf. (*See* Dkt. 22 at 5–6) (describing the Petitioner and his fiancée's relationship and the specific impediments that Petitioner faced preventing filing).

Second, the Court also considers whether it is stripped of jurisdiction to consider Petitioner's challenge to his ongoing detention under 8 U.S.C. § 1226(a). District courts are prohibited pursuant to 8 U.S.C. § 1226(e) from reviewing "[t]he Attorney General's discretionary judgment regarding the application of [8 U.S.C. § 1226]" including "the grant, revocation, or denial of bond or parole." Because the Court does not have jurisdiction to review discretionary decisions made by an IJ regarding bond, the Court cannot review the IJ's discretionary decision to deny bond for Petitioner at his prior custody redetermination hearing on October 31, 2025. *See Fuentes v. Lyons,* 808 F. Supp. 3d 733, 737 (S.D. Tex. 2025) (citing *Nielsen v. Preap*, 586 U.S. 392, 401 (2019)). However, Petitioner does not challenge the IJ's initial denial of bond. Instead, he alleges a constitutional challenge to the extent of DHS's authority to detain him under § 1226(a) for a prolonged period. (*See* Dkt. 1 at 6; Dkt. 21 at 4; Dkt. 27 at 2.) Therefore, Petitioner's independent constitutional challenge to his prolonged detention is not barred by § 1226(e) and is properly before the Court. *See Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) ("Section 1226(e) may strip us of jurisdiction to review judgments designated as discretionary under the pertinent language of the statute, but it does not deprive us of all authority to review statutory and constitutional challenges. We retain jurisdiction to review [Petitioner's] detention insofar as that detention presents constitutional issues, such as those raised in a habeas petition."); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021) ("To the extent the government is

arguing that section 1226(e) deprives the district court or this court of jurisdiction, that claim fails: [Petitioner] does not challenge the IJ's ultimate exercise of discretion . . . ."); *Velasco Lopez v. Decker*, 978 F.3d 842, 850–51 (2d Cir. 2020) (same).

Finally, the Court addresses whether Petitioner's alleged transfer outside of the Court's jurisdiction in violation of the Court's Order dated December 3, 2025, (Dkt. 6), prohibiting such transfer strips the Court of jurisdiction. Petitioner was confined at the LaSalle County Regional Detention Center, within the Laredo Division of the Southern District of Texas, at the time that his habeas petition was filed. *See* 28 U.S.C. § 124; (Dkts. 1, 3, 4, 15.) Thus, the Court retains jurisdiction over Petitioner's claims despite his alleged transfer. *See Ex Parte Endo*, 323 U.S. 283, 304–05 (1944). Accordingly, finding no impediment to jurisdiction, the Court now turns to the merits of Petitioner's challenge.

**B. Due Process Requires Heightened Protections When Detention Becomes Prolonged**

Petitioner argues that his detention under § 1226(a), which has lasted for approximately ten months, has become unlawful and that due process requires the Court to impose additional procedural safeguards. (*See* Dkt. 1 at 6; Dkt. 21 at 4; Dkt. 27 at 2.) Mr. Khedr received an initial bond hearing on October 31, 2025, approximately three months after he was detained by ICE. (Dkt. 1 at 1, 41; Dkt. 15 at 2, Attach. 7; Dkt. 21 at 3.) In accordance with existing regulations promulgated following the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Mr. Khedr bore the burden at his hearing to prove "that he [] is neither a danger to the community nor a flight risk." *See Hernandez-Lara*, 10 F.4th. at 26–27 (citing 8 C.F.R. § 236.1(c)(2)-(8)); Pub. L. No. 104-208, 110 Stat. 3009 (1996). However, the text of § 1226(a) is silent as to which party should carry the burden at a bond hearing, and the BIA previously has interpreted the statute as creating a "presumption of liberty" during removal

proceedings. *See Hernandez-Lara*, 10 F.4th. at 26 (citing *Matter of Patel*, 15 I. & N. Dec. 666, 666 (BIA 1976)).

As is well established, the Fifth Amendment's Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("even aliens shall not be . . . deprived of life, liberty, or property without due process of law"); *see also Mathews v. Diaz*, 426 U.S. 67, 77 (1976). "For this reason, 'civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections.'" *Hernandez-Lara*, 10 F.4th at 28 (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979) (emphasis in original)).

Having considered the issue, the Court is persuaded by the reasoning of the First and Second Circuits in *Hernandez-Lara* and *Velasco Lopez* in which the courts held that prolonged detention under § 1226(a) violates due process using the balancing test laid out by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976) regardless of whether the petitioner received an initial custody redetermination hearing before an IJ.

Here, as in *Hernandez-Lara* and *Velasco Lopez*, the Court finds that all three *Mathews* factors weigh in favor of Petitioner and thus, due process requires the imposition of additional procedural safeguards to justify his continued detention in the form of a new bond hearing at which the burden of proof is shifted to the Government. Under the test set out in *Mathews* the Court evaluates "(1) the private interest that will be affected by the official action, (2) a cost-benefit analysis of the risks of an erroneous deprivation versus the probable value of additional safeguards, and (3) the Government's interest, including the function involved and any fiscal and

administrative burdens associated with using different procedural safeguards." *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (citing *Mathews*, 424 U.S. at 335).

First, Petitioner's private interest is "the most elemental of liberty interests—the interest in being free from physical detention[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) and *Parham v. J. R.*, 442 U.S. 584, 600 (1979)). Moreover, "[t]he Supreme Court has repeatedly affirmed that '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" *Hernandez-Lara v. Lyons*, 10 F.4th at 28 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987). In addition, "[t]he longer the duration of the incarceration, the greater the deprivation." *Velasco Lopez*, 978 F.3d at 852.

Mr. Khedr has been detained for approximately 10 months, the same length of detention that the First Circuit found to be unreasonably prolonged in *Hernandez-Lara*. *See* 10 F.4th at 29–30. Moreover, "[t]he exact length of detention under section 1226(a) is impossible to predict and can be quite lengthy." *Id.* at 29; *see also Velasco Lopez*, 978 F.3d at 852 ("Absent release on bond, detention lasts through the initial removal determination proceedings (which themselves can take months or years) and all inter-agency and federal court appeals, even where an individual has prevailed and the Government appeals."). In Mr. Khedr's case, his immigration proceedings have stretched on for several years while his case has worked its way through the immigration court and then on appeal to the BIA, only to be remanded due to errors in the record outside of Mr. Khedr's control. (*See* Dkt. 1 at 2, 5–7, 29; Dkt. 15 at 2, Attach. 8; Dkt. 25 at 2.) Given Mr. Khedr's intent to appeal his most recent order of removal to the BIA, there remains no clear end to his detention under § 1226(a) absent intervention from this Court. Indeed, "[t]here is no administrative

mechanism by which [Mr. Khedr] could have challenged his detention on the ground that it reached an unreasonable length." *Velasco Lopez*, 978 F.3d at 852.

Second, the risk of erroneous deprivation in Mr. Khedr's case is high, and the probable value of additional procedural safeguards is great. The Supreme Court has recognized that generally, immigration detention has "two regulatory goals: 'ensuring the appearance of aliens at future immigration proceedings' and '[p]reventing danger to the community.'" *Zadvydas*, 533 U.S. at 690; *see also Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) (generally when making a custody determination, an immigration judge considers whether the noncitizen "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk"). Therefore, if Petitioner is "being detained despite the fact that he is neither a flight risk nor a danger to the community, the Government is erroneously depriving him of his freedom." *See Rashid v. Trump*, 807 F. Supp. 3d 349, 369 (D. Vt. 2025).

Detained noncitizens, particularly those representing themselves *pro se* like Mr. Khedr, experience significant challenges in meeting their burden under § 1226(a) to prove that they are not a danger or a flight risk. *See Hernandez-Lara,* 10 F.4th at 30–31 (citing several factors including the lack of counsel, limited English proficiency, lesser familiarity with immigration law and procedures, and difficulty in gathering evidence or proving a negative as creating a heighted risk of erroneous deprivation). Moreover, "'as the period of . . . confinement grows,' so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." *Velasco Lopez*, 978 F.3d at 853. Here, Petitioner received only minimal process in the form of a bond hearing that was conducted over seven months ago at which he bore the burden of proof. Thus, there is substantial risk that Petitioner has been erroneously deprived of his freedom such that the second *Mathews* factor weighs heavily in his favor.

Finally, the Court considers the Government's interest and finds that its interest in detaining noncitizens for a prolonged period of time when they are not a danger or a flight risk is minimal. The decision to detain individuals under § 1226(a) is valid in so far as it serves the legitimate governmental interests of ensuring appearance for removal proceedings and that the public is kept safe. *See Velasco Lopez*, 978 F.3d at 854; *Demore v. Kim*, 538 U.S. 510, 518–21 (2003). However, additional procedural safeguards in the form of a bond hearing "do nothing to undercut those interests. At any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees." *See Black v. Decker*, 103 F.4th 133, 153–54 (2d Cir. 2024) (citing 8 U.S.C. § 1226(a)). There is minimal administrative burden where immigration courts already regularly make custody determinations for noncitizens pending their removal proceedings. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19; 8 C.F.R. § 236.1 Indeed, requiring that the Government justify continued detention *promotes* the Government's interest in minimizing the enormous impact of incarceration in cases where it serves no purpose. *Id.* (quoting *Velasco Lopez*, 978 F.3d at 854). Similarly, should the Government find that Petitioner is not a flight risk nor a danger, the Government benefits from the reduced cost of no longer detaining Petitioner. For example, in the case of Mr. Khedr, he has lived in the United States since he was 16 years old and has a record of attending his immigration court hearings over the several years that his case remained pending prior to his detention by ICE ten months ago. (*See* Dkt. 1 at 18–22; Dkt. 15, Attach. 4.) He has several family members in the United States who have indicated their intent to support him for the duration of his removal proceedings. (*See* Dkts. 1, 21, 35.) Therefore, the Court finds that the final *Mathews* factor also weighs in Petitioner's favor.

Thus, because Mr. Khedr's detention has become unconstitutionally prolonged and is likely to continue as his removal proceedings remain ongoing, he is entitled to equitable relief. Consistent with First and Second Circuits, the Court holds that the appropriate remedy is a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that continued detention is needed to prevent the Petitioner from fleeing during his removal proceedings or harming the community. *See, e.g.*, *Valladares Mata v. Bond*, 2026 WL 1146779, at *3 (S.D. Tex. Apr. 27, 2026).

## CONCLUSION

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED IN PART**. Petitioner's Motion for Appointment of Counsel, (Dkt. 14), is **DENIED** as moot. Intervenor's Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus, (Dk. 15), is **DENIED**.

1. Intervenor is **ORDERED** to provide Petitioner with a new individualized custody review before an immigration judge at which the Government bears the burden of proving, **by clear and convincing evidence**, that Petitioner presents a risk of flight or a danger to the community. At the bond hearing, the Immigration Judge is also directed to consider the availability of alternatives to detention and conditions of supervision in determining whether Petitioner is a flight risk. Intervenor must provide this hearing **within 7 days of the issuance of this Order, or else release Petitioner.**

2. Intervenor is **ORDERED** to submit a status report informing the Court of the result of the hearing and Petitioner's custody status within **8 days of the issuance of this Order.**

3. Intervenor is **ORDERED** to submit an additional advisory addressing whether it transferred Petitioner to detention facility outside of the Southern District of Texas in violation of

the Court's Order dated December 3, 2025, (Dkt. 6), prohibiting transfer outside of this Court's jurisdiction within **3 days of the issuance of this Order.**

Finally, the Clerk of Court is **DIRECTED** to mail Petitioner and Petitioner's next of friend a copy of this Order by any receipted means at the following addresses:

**Akram Sameh Tawfik Elsayed Aly Khedr**
**A#201-613-680**
**South Texas ICE Processing Center**
**566 Veterans Dr.**
**Pearsall, TX 78061**

**Marguerite Dominguez**
**5823 Hematite Rim**
**San Antonio, TX 78222**

IT IS SO ORDERED.

SIGNED this June 24, 2026.

Diana Saldaña
United States District Judge